# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **TRAVIS C. KAUFFMANN,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action File** |
| ) | **No. 1:23-cv-03836-TWT** |
| **v.** ) | |
| ) | |
| **KRISTINE KAUFFMANN HOPE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## PARTIES' JOINT REPORT OF RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(f), Plaintiff Travis C. Kauffmann ("Travis" or "Plaintiff") and Kristine Kauffmann Hope ("Kristine" or "Defendant") submit this Joint Preliminary Report and Discovery Plan in the above matter. The parties, by their respective counsels, conferred by videoconference on October 18, 2023, regarding the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case and to discuss the plan for discovery in the above referenced matter, and now submit the following proposed joint discovery plan. Discovery will be conducted in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court unless otherwise stated.

In attendance at the parties' Rule 26(f) conference were: Scott M. Ratchick of the firm Chamberlain, Hrdlicka, White, Williams & Aughtry, for Plaintiff; and Robert S. Carlson and Harry W. MacDougald of the firm Caldwell, Carlson, Elliott & DeLoach, LLP for Defendant.

**1.    Description of Case:**

(a)    _Describe briefly the nature of this action_.

**Plaintiff's Portion:**

Plaintiff asserts claims against Defendant for breach of fiduciary duty (Count I), breach of contract (Count II), and attorneys' fees (Count III).  The claims arise out of Defendant's violations of fiduciary and contractual duties owed by her to Plaintiff arising out of certain family trusts established for the benefit of Plaintiff. Defendant, while executing control over said trusts, did so willfully in violation of the terms of said trusts to the detriment and injury of Plaintiff.

Specifically, Travis is the sole beneficiary of the Craig Kauffmann Trust that was established on March 2008 for the benefit of Travis's father, Craig Kauffmann, and his descendants.  Craig Kauffmann passed away in April 2012.  Travis is the only descendant of Craig Kauffmann.  For all time periods and purposes relevant hereto, Defendant served as the successor trustee of the Craig Kauffmann Trust.

Pursuant to the express terms of the Craig Kauffmann Trust, Defendant, as trustee, was and is required to "furnish at least annually to each beneficiary entitled

to receive income hereunder a statement of all receipts and disbursements made hereunder." Defendant failed to provide the required statements to Travis. Further, pursuant to the express terms of Craig Kauffmann Trust, all of the assets of the Craig Kauffmann Trust were required to be distributed outright to Travis upon Travis attaining the age of thirty-five (35). On or about June 26, 2019, just weeks prior to Travis's 35th birthday, Defendant, as trustee of the Craig Kauffmann Trust, transferred essentially all of the assets of the Craig Kauffmann Trust out of the Craig Kauffmann Trust without authorization and specifically with the intent to deprive Travis of the assets of the trust upon Travis reaching 35 years of age.

Rather than distribute the assets of the Craig Kauffmann Trust to Travis, as required, Defendant transferred the assets to an entity called CCK Investments, LLLP ("CCK Investments"). The sole General Partner of CCK Investments is an entity called CCK Management, LLC ("CCK Management"). Defendant is the sole Member and a Manager of CCK Management. Although CCK Management holds only a 00.01% General Partnership Interest in CCK Investments, with the Craig Kauffmann Trust having the other 99.99% Limited Partnership Interest, Defendant effectively controls the management and assets of CCK Investments.

Instead of making an outright distribution of the assets of the Craig Kauffmann Trust to Travis, only an illiquid partnership interest in CCK Investments was transferred to the benefit of Travis, the control of which interest and assets

remains with Defendant. As a result of this, Defendant prevented Travis from obtaining full use and the beneficial enjoyment of the Craig Kauffmann Trust assets to which he was entitled, resulting in damages in the principal amount of more than $6,000,000.

**Defendant's Portion:**

This is an action for breach of trust filed by Travis Kauffman ("Travis") against his aunt, Kristine Kauffman Hope ("Ms. Hope"). Although Travis has asserted a claim for breach of contract, it is not an applicable theory of recovery for Ms. Hope's alleged actions as trustee of the Craig Kauffmann Trust, Co-Manager of CCK Management; and Member of CCK Management. Ms. Hope denies that she has breached her fiduciary duties in any of her capacities as alleged and denies that Travis has been damaged by any acts or omissions that would entitle Travis to recover on his claims.

(b) *Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence*.

**Plaintiff's Portion:**

On March 5, 2008, Travis's grandmother, Suzanne M. Kauffmann, established the Craig C Kauffmann Trust (the "Craig Kauffmann Trust"). The Craig Kauffmann Trust was established for the benefit of Craig C. Kauffmann ("Craig")

and his descendants. Craig was the father of Travis, and Travis was Craig's only child.

Pursuant to the terms of the Craig Kauffmann Trust. The Craig Kauffmann Trust granted Craig a testamentary general power of appointment to appoint the Craig Kauffmann Trust assets to any individual, any charitable organization, Craig's estate, Craig's creditors, or the creditors of Craig's estate as Craig may specify in his Last Will and Testament. In default of the exercise of this power of appointment, the Craig Kauffmann Trust assets were directed to distribute outright to Craig's then living descendants, per stirpes; provided, however, that any share established for a beneficiary was directed to be retained in trust until the beneficiary reached age 35, at which time said share was to be distributed to said beneficiary. Craig died on April 17, 2012. Craig died intestate without having exercised his general power of appointment under the Craig Kauffmann Trust such that Travis is the sole heir and beneficiary of Craig's probate estate.

On or about July 9, 2013, CCK Management, LLC ("CCK Management") was formed. Defendant Kristine is the sole Member and Kristine and Michael P. English ("English") are Co-Managers of CCK Management. Also on or about July 9, 2013, CCK Investments, LLLP ("CCK Investments") was formed. CCK Management is the sole General Partner of CCK Investments, owning a 00.01% General Partnership

Interest in CCK Investments, and the Craig Kauffmann Trust is the sole Limited Partner of CCK Investments, owning a 99.99% Limited Partnership Interest.

The Agreement of Limited Partnership of CCK Investments states that CCK Management transferred cash into CCK Investments in the amount of $300.00 in exchange for its 00.01% General Partnership Interest (the "CCK Management Contribution"), and that Howard Kauffmann, as trustee of the Craig Kauffmann Trust, transferred cash in the amount of $2,999,700.00 into CCK Investments in exchange for its 99.99% Limited Partnership Interest (the "Craig Kauffmann Trust Contribution"). However, the Craig Kauffmann Trust Contribution was not made to CCK Investments in 2013, and no significant assets were in fact transferred from the Craig C. Kauffmann Trust to CCK Investments, LLLP prior to 2019.

Howard Kauffmann resigned as trustee on April 13, 2016, and was succeeded by Kristine as trustee of the Craig Kauffmann Trust. Howard Kauffmann thereafter passed away on or about May 3, 2016.

Pursuant to the express terms of the Craig Kauffmann Trust, Kristine, as trustee, was and is required to "furnish at least annually to each beneficiary entitled to receive income hereunder a statement of all receipts and disbursements made hereunder." Kristine failed to provide the required statements to Travis.

Pursuant to the express terms of Craig Kauffmann Trust, all of the assets of the Craig Kauffmann Trust were required to be distributed outright to Travis upon

Travis attaining the age of thirty-five (35). On or about June 26, 2019, just weeks prior to Travis's 35th birthday, rather than distribute all of the assets of the trust outright to Travis, Kristine, as trustee of the Craig Kauffmann Trust, transferred essentially all of the assets of the Craig Kauffmann Trust out of the Craig Kauffmann Trust without authorization and with the intent to deprive Travis of the assets of the trust upon Travis reaching 35 years of age. Instead of an outright distribution of trust assets, an illiquid partnership interest was transferred to Travis, the control of which interest and assets remains with Kristine. Travis was and has continued to be prevented from obtaining full use and the beneficial enjoyment of the Trust assets to which he was entitled.

The assets of the Craig Kauffmann Trust had been primarily held in an investment account at Morgan Stanley Smith Barney ("Morgan Stanley"), but Kristine transferred the assets to a new account established at Morgan Stanley in the name of CCK Investments, with such transferred cash and securities having a value in excess of $4,300,000. At the time of the transfers of the funds from the Craig Kauffmann Trust to CCK Investments, Kristine was the sole member of the general partner of CCK Investments. As a result of the above-referenced transfers, the transferred assets were retained in CCK Investments and not distributed outright to Travis upon Travis's 35th birthday.

In addition to transferring the Craig Kauffmann Trust's assets out of the trust and out of the reach of Travis, Kristine has denied Travis access to the funds held in CCK Investments following the transfer of those assets from the Craig Kauffmann Trust.

Kristine has used the funds she has diverted away from Travis to defend herself against her own misconduct. Effectively, Kristine is improperly using Travis's own money to defend against Travis's efforts to recover what rightfully belongs to him.

**Defendant's Portion:**

Craig C. Kauffmann ("Craig") was the oldest child of Howard C. Kauffmann ("Howard") and Suzanne M. Kauffmann ("Suzy"). Craig's younger siblings were the Defendant Kristine Kauffmann Hope ("Ms. Hope"), Lane Kauffman, Doug Kauffman and Scott Kauffman.

Howard was a mechanical engineer who rose through the corporate ranks of ExxonMobil while overseeing large segments of its global operations. He ultimately became President and COO of ExxonMobil before his retirement in 1985.

Craig was a troubled individual whose life was plagued by persistent struggles with drug addiction.

Beginning in 2001, the accounting firm of Gifford, Hillegass & Ingwersen ("GHI") and the law firm of Ingwersen & Taylor LLP ("I&T") advised Howard and Suzy in certain aspects of their estate planning. Howard and Suzy's utilized gifting strategies primarily designed to reduce tax that involved making significant cash gifts to each of their five children and/or cancellation of indebtedness over a period of years. Unlike his siblings, Craig proved to be a spendthrift and had three failed marriages by the time he was 45. Craig's addiction repeatedly led to a complete depletion of any money or liquid assets given to him by his parents. Giving money to him became an enabling factor in his addictions.

In light of Craig's history of intractable drug addiction, on March 5, 2008, and on the advice of GHI and I&T, Craig's mother Suzy established the CRAIG C. KAUFFMAN TRUST, Howard Kauffmann, Trustee, for the benefit of Craig and his descendents ("Craig's Trust"). Under the terms of Craig's Trust, the trustee would provide support based on objective criteria to Craig for life. The Trust gave Craig a testamentary general power of appointment to appoint the trust assets to whomever he desired upon his death. In default of the exercise of his power, the trust assets would pass outright to Craig's descendants who had attained the age of 35. At the time that the trust was created, Craig was age 61, and his only son Travis was age 23.

In 2008 and 2011, Suzy funded Craig's trust with cash contributions of approximately $1.8 million.

Craig died intestate on April 17, 2012, without having exercised his general power of appointment. The principal asset in Craig's probate estate was a 9.17182% limited partnership interest in Kauffmann Investments LLLP ("KI"). Howard, as the administrator of Craig's estate, transferred this limited partnership interest to Travis outright on June 1, 2012.

As noted, under the terms of Craig's trust, the trustee was to hold the trust property for the benefit of Travis until he attained age 35. However, after Craig's death in 2012, Howard and Suzy became concerned about Travis' ability to properly handle significant wealth, and worried that his decision to enter the medical profession would expose him to a high level of risk of personal liability. Howard and Suzy shared these concerns with their advisors at GHI and I&T, along with their desire that none of their grandchildren receive their individual share of inherited wealth until they were at least 55 years old, a long-held and expressed intent consistently reflected in their overall estate planning.

To address these concerns, Howard and Suzy's advisors proposed that Howard form a new limited partnership arrangement to be named CCK Investments LLLP. CCK Investments would have only two partners. The 0.01% general partner,

CCK Management LLC, would be controlled by Howard's daughter Kristine as its sole member. The 99.99% limited partner would be Howard in his capacity as the trustee of Craig's trust. Both CCK Management LLC and CCK Investments LLLP were organized on July 9, 2013. Under CCK Management's operating agreement the co-managers of the general partner were Ms. Hope and Michael P. English. Travis was 29 years old at the time.

The principal purpose of CCK Investments LLLP was to ensure that Travis' remainder interest in Craig's Trust would continue to be protected from the claims of potential creditors after Travis turned 35.

Howard resigned as trustee of Craig's Trust on April 13, 2016, and was succeeded by Ms. Hope as the named successor trustee.

Howard died on May 3, 2016.

The principal asset of Craig's Trust was an investment account at Morgan Stanley holding cash and marketable securities. Ms. Hope carried out the estate plan that Howard as settlor and donor wanted and that his advisors recommended. On June 26, 2019, Ms. Hope, as successor trustee of Craig's Trust, transferred the assets in the Morgan Stanley trust account over to a new Morgan Stanley account titled in the name of CCK Investments LLLP, the limited partnership held as an asset of Craig's trust. Since then, Travis has been receiving regular K-1s from CCK

Investment reporting partnership profits and losses in respect to his 99.99% L.P interest. Travis has also been receiving regular partnership distributions from CCK Investments specifically calculated to cover his personal tax liability as a partner/taxpayer under Subchapter K of the Internal Revenue Code.

At present, all of the assets formerly held in the Craig C. Kauffmann Trust have been contributed to CCK Investments LLLP except for a reserve cash account of *de minimis* value.

(c)    *The legal issues to be tried are as follows*:

**Plaintiff's Portion:**

(1)        Whether Defendant breached her fiduciary duties, in her capacities as trustee of the Craig Kauffmann Trust, as Member and Manager of CCK Management (and thereby as controlling person of CCK investments), owed to Travis;

(2)        Whether Defendant breached the terms of the Craig Kauffmann Trust by failing to distribute the assets of the trust to Travis upon Travis attaining the age of thirty-five (35);

(3)        Whether Defendant improperly transferred the assets of the Craig Kauffmann Trust to CCK Investments, an entity in which she holds a financial interest and over which she exercises control;

(4)      Whether Defendant acted with malice and/or reckless disregard for the interests of Travis;

(5)      Whether Plaintiff is entitled to recover damages for the losses he sustained, and the amount of damages Plaintiff is entitled to recover;

(6)      Whether Plaintiff is entitled to recover punitive damages; and

(7)      Whether Plaintiff is entitled to recover attorneys' fees.

**Defendant's Portion:**

Defendant states that she has not asserted counterclaims or third-party claims.

(d)      *The cases listed below (include both style and action number) are related*:

(1)      Pending Related Cases:

N/A

(2) Previously Adjudicated Related Cases:

N/A

**2.      This case is complex because it possesses one (1) or more of the features listed below (please check):**

_____ (1)      Unusually large number of parties

_____ (2)      Unusually large number of claims or defenses

_____ (3)      Factual issues are exceptionally complex

_____ (4)      Greater than normal volume of evidence

_____(5)      Extended discovery period is needed

_____ (6)      Problems locating or preserving evidence

_____ (7)      Pending parallel investigations or action by government

_____ (8)      Multiple use of experts

_____ (9)      Need for discovery outside United States boundaries

_____ (10)      Existence of highly technical issues and proof

_____ (11)      Unusually complex discovery of electronically stored information

**3.    Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**      **Chamberlain, Hrdlicka, White Williams & Aughtry**
Scott M. Ratchick
191 Peachtree Street, NE, 46th Floor
Atlanta, Georgia  30303
T: (404) 659-1410
F: (404) 659-1852
scott.ratchick@chamberlainlaw.com

**Defendant:** **Caldwell, Carlson, Elliott & DeLoach, LLP**
Robert S. Carlson
Two Ravinia Drive
Suite 1600
Atlanta, Georgia 30346
T: (404) 843-1956
F: (404) 843-2737
rcarlson@ccedlaw.com

**4. Jurisdiction:**

Is there any question regarding this court's jurisdiction?

(\_\_\_\_) Yes                 ( X ) No

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5. Parties to This Action:**

(a)   The following persons are necessary parties who have not been joined: N/A

(b)   The following persons are improperly joined as parties:  N/A

**<u>Plaintiff's Portion</u>:**
Plaintiff reserves the right to specifically name as additional defendants persons or entities who are currently identified only as "Fictitious Parties" when and if their true identities become known through discovery.

**Defendant's Portion**:

Defendant reserves the right to join additional parties if information obtained during discovery makes it necessary to move for joinder.

(c)     The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:  N/A

(d)     The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6.     Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P.15.   Further instructions regarding amendments are contained in LR 15.

(a)     List separately any amendments to the pleadings that the parties anticipate will be necessary:

     **Plaintiff's Portion:**     None at this time.

     **Defendant's Portion:**     None at this time.

(b)     Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7.     Filing Times for Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a)     *Motions to Compel:* before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b)     *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c)     *Other Limited Motions:* Refer to Local Rules 7.2A; 7.2B and 7.2E, respectively regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)     *Motions Objecting to Expert Testimony:* Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8.     Initial Disclosures:**

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state

the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).

**9.** **Request for Scheduling Conference:**

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party**.**

Not at this time.

**10.** **Discovery Period:**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing. (**See Below**)

Please state below the subjects on which discovery may be needed:

**Plaintiff's Portion:**

Plaintiff will require discovery on the following:

- Defendant's actions in the management of the Craig Kauffmann Trust, CCK Investments, and CCK Management, and documents and information explaining the purpose and justification for Defendant's actions;

- Financial information and documents related to the Craig Kauffmann Trust, CCK Investments, and CCK Management, including but not limited to tax returns, bank and brokerage statements, financial and accounting statements, and statements of receipts and disbursements;

- Defendant's communications with Plaintiff and third parties concerning the Craig Kauffmann Trust, CCK Investments, and CCK Management;

- Defendant's use and movement of any and all funds and other assets related to the Craig Kauffmann Trust, CCK Investments, and CCK Management, and documents and information explaining the use and movement of said funds and assets;

- Documents and information related to the SMK 2013 Travis Kauffmann Irrevocable Trust u/a/d July 2, 2013, including but not limited to Defendant's role and conduct as trustee of said trust and Defendant's actions in the management of said trust;

- Documents and information related to any and all other trusts of which Travis is a beneficiary and Defendant serves or has served as trustee or other fiduciary, including but not limited to Defendant's role and conduct as trustee of said trust(s) and Defendant's actions in the management of said trust(s);

- Documents and information related to the formation, maintenance and management of the Craig Kauffmann Trust, CCK Investments, and CCK Management; and

- Documents and information otherwise with regard to the factual basis for Defendant's denial of the allegations in the Complaint and the responses, denials and defenses asserted by Defendant in her Answer.

**Defendant's Portion:**

- Documents and information concerning Craig Kauffmann's, Howard Kauffmann's, Travis Kauffman's, and their advisor's communications with the Defendant.

- Documents and information concerning the basis of Plaintiff's damages calculation(s) and expert testimony related thereto.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery

should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

The parties propose the following discovery schedule:

- **A 5-month fact discovery period, commencing with the date of the filing of this Plan;**

- **Expert reports, if any, shall be due within fifteen (15) days following the fact discovery deadline;**

- **Expert discovery (other than expert depositions) cut-off shall be thirty (30) days following the expiration of the fact discovery period; and**

- **The deadline for expert depositions shall be thirty (30) days following the deadline for production of expert reports; and**

- **The deadline for submission of dispositive motions shall be forty-five (45) days following the deadline for expert depositions.**

**11.    Discovery Limitation and Discovery of Electronically Stored Information:**

(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed? None at this time.

(b) Is any party seeking discovery of electronically stored information?

_X_ Yes _____ No

If "yes,"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

None at this time. The parties will work together in an effort to address any issues in this regard as they arise. The parties reserve the right to present this issue to the Court in the future if necessary.

(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

No specific agreement on format has been reached at this time. The parties will work together in an effort to address any issues in this regard as they arise. The parties reserve the right to present this issue to the Court in the future if necessary.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12.   Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)? None at this time.

**13.   Settlement Potential**:

(a)    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on October 18, 2023, and that they participated in settlement discussions.   Other persons who participated in the settlement discussions are listed according to party.

For plaintiff:  Lead counsel (signature): _/s/ Scott M. Ratchick_

Other participants:

For defendant:  Lead counsel: _/s/ Robert S. Carlson_

Other participants:

(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery.

(__X__) A possibility of settlement after discovery.

(_____) A possibility of settlement, but a conference with the judge is needed.

(_____) No possibility of settlement.

(c)    Counsel  _X_ do or ___ do not intend to hold additional settlement conferences among themselves prior to the close of discovery.  The proposed date of the next settlement conference is: to be determined.

(d)    The following specific problems have created a hindrance to settlement of this case:  N/A

**14.    Trial by Magistrate Judge**:

Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a)    The parties (_____) do consent to having this case tried before a magistrate judge of this court.  A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this ____ day of _____, 2023.

(b)    The parties (_X_) do not consent to having this case tried before a magistrate judge of this court.


/s/ Scott M. Ratchick                              /s/ Robert S. Carlson

Counsel for Plaintiff                              Counsel for Defendant

# SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

- **A 5-month fact discovery period, commencing with the date of the filing of this Plan;**
- **Expert reports, if any, shall be due within fifteen (15) days following the fact discovery deadline;**
- **Expert discovery (other than expert depositions) cut-off shall be thirty (30) days following the expiration of the fact discovery period; and**
- **The deadline for expert depositions shall be thirty (30) days following the deadline for production of expert reports; and**
- **The deadline for submission of dispositive motions shall be forty-five (45) days following the deadline for expert depositions.**

All further deadlines and dates for trial shall be set by further Order of this Court.

IT IS SO ORDERED, this _____ day of _____, 2023.


_____
The Honorable Thomas W. Thrash
United States District Court Judge

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the opposing parties in the foregoing matter with a copy of the attached Parties' Joint Report of Rule 26(f) Conference with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record for Defendant:

> Robert S. Carlson, Esq.
> Caldwell, Carlson, Elliott & DeLoach, LLP
> Two Ravinia Drive, Suite 1600
> Atlanta, Georgia 30346

This 9th day of November, 2023.

*/s/ Scott M. Ratchick*

12949736.v2